# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. **1:20-MJ-00230**
Information Associated with the Cellular Device Assigned )
Call Number 513-300-4872 that is Stored at Premises )
Controlled by AT&T )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A. This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A).

located in the **Northern** District of **Texas**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 922(g)(1) | Felon in Possession of a Firearm and Ammunition |

The application is based on these facts:

See attached Affidavit of DEA Special Agent Joe Reder.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Joseph Reder, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **Mar 10, 2020**

*Judge's signature*

City and state: Cincinnati, OH

Stephanie K. Bowman, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER 513-300-4872 THAT IS STORED AT PREMISES CONTROLLED BY AT&T | Case No. **1:20-MJ-00230**<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Joe Reder, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number 513-300-4872 ("the **SUBJECT PHONE**") that is stored at premises controlled by AT&T, a wireless telephone service provider headquartered in Dallas, Texas. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require AT&T to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the Drug Enforcement Administration and have been since January 2006. I have completed basic law enforcement training at the DEA Academy in Quantico, Virginia, and have received extensive training in the investigation of offenses involving controlled substances. On November 9, 2016, I was sworn in as a Deputy Sheriff with the Hamilton County Sheriff's Office in Cincinnati, Ohio. For approximately 18 months I was

assigned to the Hamilton County Heroin Task Force and conducted investigations involving both fatal and non-fatal heroin overdoses.

3. During the course of my law enforcement career I have conducted and participated in the investigation of numerous criminal offenses, including those involved in the current investigation. I have participated in over 100 illicit drug trafficking investigations, ranging from street-level dealers to major drug suppliers. These investigations have also included the unlawful importation, possession with intent to distribute, and distribution of illegal substances, the related money-laundering instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotics offenses. These investigations have resulted in the seizure of narcotics, the arrest, prosecution, and conviction of suspects, and the seizure of large amounts of U.S. currency; and they have also involved: the use of confidential informants and undercover agents; the analysis of pen registers, trap and trace, and toll records; and physical surveillances and the execution of search warrants. I have planned, participated in, and supervised the execution of no fewer than 50 search warrants authorizing the search of drug traffickers and of locations associated with drug traffickers and their co-conspirators, such as residences, businesses, storage facilities, outbuildings, safety deposit boxes, and vehicles. I have also been the affiant on wiretap affidavits, have testified in grand jury proceedings, and have written reports and analyzed documents in the course of investigations.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that Darias JACKSON has committed a violation of 18 U.S.C. § 922(g)(1) (felon in possession of firearm or ammunition). There is also probable cause to search the information described in Attachment A for evidence of this crime as further described in Attachment B.

### PROBABLE CAUSE

**A.  On September 19, 2019, the Victim was shot nine times.**

6. At approximately 3:09 am on September 19, 2019, uniformed officers responded to an apartment on Groesbeck Road for a report of shots fired. While officers were on their way, they received reports that a victim (the "Victim") had recently arrived at the hospital suffering from multiple gunshot wounds.

7. Officers located nine 9 mm casings and blood outside the apartment on Groesbeck Road. I was informed by an agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives that the ammunition associated with these casings was manufactured outside the State of Ohio.

**B.  Hospital records from the day of the shooting list the SUBJECT PHONE as the Victim's cell number.**

8. A doctor evaluated the victim's lucidity upon his/her arrival at the hospital on September 19, 2019. The doctor rated the Victim as a "14" on a scale of 1 to 15, with 15 being the most lucid. In a later interview, the doctor explained to me that, at the time of the Victim's arrival, the Victim was lucid and answering questions, although the Victim was confused by more complicated questions.

9. Hospital records from the date of the Victim's arrival at the hospital list the **SUBJECT TELEPHONE** as the Victim's cell phone number, suggesting that either the Victim or someone who accompanied the Victim to the hospital provided that phone number as the Victim's.

3

10. Shortly after his/her arrival at the hospital, the Victim was taken into surgery and was unable to provide any statements to officers for several days.

### C. On October 2, 2019, the Victim identified JACKSON as the shooter.

11. On October 2, 2019, when shown a 6-pack of photographs, the Victim identified Darias JACKSON as the shooter and said he/she had known JACKSON for many years.

12. At the time of the shooting on September 19, 2019, JACKSON was on federal supervised release in connection with his 2013 conviction for Conspiracy to Possess with Intent to Distribute 1,000 Kilograms or More of Marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A), a Class A felony punishable by more than one year in prison. JACKSON was sentenced to 50 months' imprisonment for that offense.

### D. On October 31, 2019, the Victim recanted his/her statement under suspicious circumstances.

13. On October 31, 2019, a notary public for the hospital where the Victim was being treated was called to the Victim's room to notarize a statement in which the Victim recanted his/her identification of JACKSON as the shooter.

14. Upon entering, the notary saw six people in the room: the Victim, who was sitting in his/her bed with his/her legs dangling over the side; three individuals on a love seat who the notary believed were likely the Victim's parents and a sibling; and two unknown males in the back of the room. The notary stated that the two men in the back of the room brought the typewritten affidavit to her. The Victim told the notary that he/she had read the affidavit. The notary then asked three questions to determine whether the Victim was competent to sign the affidavit ("Who is the president of the United States?" "Where are you?" and "What is today's date?"). After receiving satisfactory responses, the notary reviewed the affidavit with the Victim and noted to the Victim that it appeared the Victim was recanting a previous statement. The

4

Victim responded that he/she was recanting because the person he/she had accused was his/her cousin and it was the first name the Victim had thought of after the shooting and that was why he/she said the name originally. According to the notary, the Victim stated, "He's my boy; it was not him."

15. The Victim signed the affidavit, and the notary notarized it. As soon as the document was notarized, the two men in the back of the room stepped forward, took the signed statement, and walked out of the room.

    **E.    On January 8, 2020, the Victim reaffirmed that JACKSON was the shooter.**

16. In an interview on January 8, 2020, the Victim again identified JACKSON as the shooter, saying that he/she had been on a substantial amount of pain medicine when he/she signed the affidavit on October 30, 2019.

    **F.    A video taken moments before the shooting appears to show the Victim and JACKSON in an aggressive verbal confrontation.**

17. After the shooting, but before the Victim was medically stable and could be interviewed, law enforcement received anonymous tips that Individual 1 had taken video of a confrontation between the Victim and JACKSON shortly before the shooting.

18. Law enforcement later obtained a copy of the alleged video, which shows two men who strongly resemble the Victim and JACKSON in an aggressive verbal confrontation. The video's metadata show that the video was taken at 3:06 am—approximately 3 minutes before the first 911 call reporting that the Victim had been shot. The video also partially shows a vehicle that is consistent in appearance with a vehicle registered to JACKSON; the person who appears to be JACKSON is sitting on that vehicle in parts of the video. Because the video appears to have been taken from inside an apartment, while the men were outside in a parking lot, the men's words cannot be clearly heard.

5

    **G.    AT&T likely has evidence relevant to this case, including evidence of the SUBJECT PHONE's approximate location at relevant times leading up to the shooting.**

19.    In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

20.    Based on my training and experience, I know that AT&T can collect cell-site data about the **SUBJECT PHONE**. I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

21.    Based on my training and experience, cell-site data may constitute evidence of the crimes under investigation because the information can be used to determine an approximate location for the device, and therefore its user, at relevant times. In this case, I believe that cell-site data about the **SUBJECT PHONE** is likely to be relevant evidence in this investigation,

6

because it may shed light on where the Victim was earlier in the evening, who the Victim may have been with at relevant times leading up to the shooting, and whether the Victim was at the location pictured in the video described above at the time of the argument caught on video.

22. Based on my training and experience, I know that wireless providers such as AT&T typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as AT&T typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **SUBJECT PHONE**'s user or users.

## AUTHORIZATION REQUEST

23. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

24. I further request that the Court direct AT&T to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on AT&T, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

25. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These

documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

JOSEPH M. REDER
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on March 10, 2020.

HON. STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call number 513-300-4872 that are stored at premises controlled by AT&T ("the Provider"), which is headquartered in Dallas, Texas, and accepts service of process at AT&T Global Legal Demand Center, AT&T Corporation, 11760 U.S. Highway 1, North Palm Beach, FL 33408.

## ATTACHMENT B

### Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period of **September 16, 2019, through September 22, 2019**:

  a. The following information about the customers or subscribers of the Account:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

   viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

   i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

   ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

**The provider is hereby ordered to produce the information described above within 10 days of issuance of this order.**

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 922(g)(1) involving Darias JACKSON on or about September 19, 2019.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.